```
RECEIVED                 Received From        FILED         ENTERED
FORSBERG & UMLAUF, PS    SEATTLE              LODGED        RECEIVED
                         DEC 0 8 2003         DEC 0 4 2003
   DEC 0 4 2003                       BY   CLERK U.S. DISTRICT COURT   MR
                                           WESTERN DISTRICT OF WASHINGTON
                                                              DEPUTY
File No. _____  Notify _____
Approved for Filing _____
                                        HON. FRANKLIN BURGESS
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANTHONY MCGARRY,  Plaintiff,  v.  HOLLAND AMERICA LINE-WESTOURS, INC., a Washington corporation, WIND SURF LIMITED, a Bahamian corporation, and HAL CRUISES LIMITED, a Bahamian corporation,  Defendants. | NO. CV03-0269 FDB  PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY  **Noted on Calendar: December 5, 2003** |

Plaintiff has brought this motion to obtain basic and necessary discovery: reports of previous similar slip and fall accidents; information concerning the deck material around the swimming pools on defendants' vessels so as to evaluate the information concerning the prior similar accidents; and defendants' safety manual. Defendants' response does little other than



RIGINAL



03-CV-00269-RPLY

FURY BAILEY
710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288

demonstrate the lengths to which defendants' will go to obscure the issues and obstruct discovery.

1.  <u>The information requested is relevant itself and may lead to other admissible evidence.</u> As defendant acknowledges, one way to establish liability is for plaintiff to prove the existence of a slipping hazard, notice of it to defendants and defendants failure to take reasonable care in responding to the notice. The evidence of prior similar slip and fall injuries is relevant to all of these elements.

Prior similar slips and falls on a walking surface that give rise to an inference that the walking surface is unreasonably slippery. We know of 10 in one year on the VEENDAM near the Lido pool that defendants have deigned to disclose. We now know that all of defendants vessels have Bolideck on the Lido deck. If the same rate applies to all of defendants 12 vessels, there have been about 1000 similar slip and fall injuries on the Bolideck near the swimming pools on defendants' vessels. The fact that defendants are at pains to explain this volume of injuries away proves that it is relevant evidence of the hazard.

Nanna Hogendoorn, defendants' Director of Technical Operations, agrees. In his deposition taken on December 2, he testified that examining the accident reports of all reported slip and falls aboard all of defendants' vessels is relevant to determine the safety of the deck material. He now intends to do this examination of all of the accident reports of slip and falls aboard all ships for the last five years.

Plaintiff's Reply in Support of
Motion to Compel Discovery
(CV03-0269 FDB) - 2



FURYBAILEY

710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288

| | | |
|---|---|---|
| 1 | Q. | (BY MR. FURY) Would it be important to you to know if the Veendam has a lot more slips and falls than the other ships? |
| 2 | | |
| 3 | A. | It would have, but I don't know that. |
| 4 | Q. | I know, but would it be important for you to know? |
| 5 | A. | It could have. **It could be.** |
| 6 | Q. | **And if the Veendam had a lot more slips and falls, you'd have concern about that kind of Bolideck, wouldn't you?** |
| 7 | | |
| 8 | **A.** | **That's correct.** |
| 9 | Q. | And if it has a lot fewer slips and falls, that would give you a concern for the other kind of Bolideck, wouldn't it? |
| 10 | | |
| 11 | A. | That's correct. |
| 12 | Q. | You'd have to take an examination of that, wouldn't you? |
| 13 | | |
| 14 | A. | That's correct. |
| 15 | Q. | Do you intend to do that? |
| 16 | A. | I mean, we have to -- then **I need all the accident reports.** |
| 17 | Q. | **Do you intend to go look at those?** |
| 18 | A. | **I will do that. I will ask for them.** |
| 19 | Q. | You will ask for them. **Why will you ask for those accident reports?** |
| 20 | | |
| 21 | A. | **To see if the Veendam is worse or better than the other ships.** |
| 22 | Q. | And why do you want to see if the Veendam is better or worse than the other ships? |
| 23 | | |
| 24 | A. | Then the -- **that gives us an indication about the deck.** |
| 25 | Q. | **About the safety of the deck?** |
| 26 | A. | (Nodding.) |

**Plaintiff's Reply in Support of Motion to Compel Discovery (CV03-0269 FDB) - 3**



710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288

Q. Correct?

A. **Correct.**

Q. Would you look back for two, three, four years?

A. Yeah, about **four or five years**, I would say.

Q. Four or five years. Good.

The reports of prior injuries from slipping and falling on the Bolideck also gives defendants notice of the hazard. Now that defendants have supplemented discovery to admit that there is Bolideck on the Lido deck on all of defendants' vessels, accident reports from all of them are relevant to give notice of the hazard of slipping on Bolideck.

The number of the reported slip and fall injuries is relevant to the reasonableness of defendants' response to the notice of the hazard provided by the reports. Defendants' own witnesses agree. For example, Phillip Morrell, its former vessel superintendent responsible for the VEENDAM now runs TOTE. He testified:

> Q. I was asking you as a person -- and you just said you're in a position of running a shipping company, and if you're running a shipping company and you have nine accidents that occur in the same way in the same area of a vessel all within a year, what would you do?
>
> *     *     *
>
> A. We'd review the situation and see what can be done.
>
> Q. . . . You'd see if there's some corrective action that could be done to make the place safer, wouldn't you?
>
> A. Yes.
>
> Q. And you think that would be the prudent thing to do?

Plaintiff's Reply in Support of
Motion to Compel Discovery
(CV03-0269 FDB) - 4

FURY BAILEY
710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288



1      A.     Yes.

2  It would not take even nine such reported injuries for Mr. Morrell to take some action:

3

4      Q.     (BY MR. FURY) Now we have Mr. McNamee, Mr. Williams, Ms. Cacas, Mr. Martini, Ms. Godfrey, six, Ms. Villa. Is that enough to give you concern you've got a safety problem with the walking surface around the lido pool?

5

6

7      MR. MITCHELL: Objection; incomplete hypothetical.

    (Phone interruption.)

8

9      Q.     (BY MR. FURY) We now have six slip-and-falls by passengers near the lido pool on a wet deck that weren't prevented by the presence of the warning signs that you've agreed are very similar, correct?

10

11

12      MR. MITCHELL: Objection; mischaracterizes previous testimony and assumes facts not in evidence.

13

14      Q.     (BY MR. FURY) Your answer was yes, right?

15      A.     That's what -- yeah.

16      Q.     Is that enough to give you as the marine superintendent responsible for the day-to-day operations of a vessel such as this concern for the safety of the walking surface?

17

18      MR. MITCHELL: Objection; incomplete hypothetical.

19      A.     Again, it's something I would review.

20      Q.     (BY MR. FURY) You'd have to review it?

21      A.     Yeah.

22      Q.     In reviewing it, what would you do?

23      A.     Just investigate the area, see what happened, just try and get a better understanding.

24

25      Q.     Would you look and see if other vessels with the same kind of walking surface had a similar accident history?

26

Plaintiff's Reply in Support of
Motion to Compel Discovery
(CV03-0269 FDB) - 5


FURY BAILEY

710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600 FAX: (206) 726-0288

MR. MITCHELL:    Objection; calls for speculation.

A.   Not necessarily.

Q.   (BY MR. FURY) You might do that?

A.   Might. Could have.

Q.   That's one thing --

A.   Probably, but more specifically look into what's happening here.

\*          \*          \*

Q.   (BY MR. FURY) Is the review you would do after six accidents something that you would consider should be done as quickly as possible before someone else is hurt?

A.   Should probably -- I don't know about as quickly as possible, but it probably should be done in a reasonable amount of time.

Q.   And what's a reasonable amount of time?

MR. MITCHELL:    Objection; calls for speculation.

Q.   (BY MR. FURY) A month?

A.   Month or two.

\*          \*          \*

Q.   Let's look at Exhibit 10. This injury occurred three months after Ms. Villa's, right, on February 14?

A.   That would be pretty much right.

Q.   Anthony McGarry. "Passenger was bare foot and his feet were wet from being in the pool." He wasn't dizzy from being in the hot tub according to this report, was he?

A.   It doesn't say so.

\*          \*          \*

Q.   "As passenger stepped on the deck surface he slipped and fell." It's very much the same thing as the last eight --

Plaintiff's Reply in Support of
Motion to Compel Discovery
(CV03-0269 FDB) - 6

FURY BAILEY

710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288

>     MR. MITCHELL:   Assumes facts not in evidence and calls for speculation.
>
>     Q.    (BY MR. FURY) -- reported accidents, isn't it, sir, slipping on wet spot on the deck?
>
>     A.    Uh-huh.
>
>     Q.    By the pool, right?
>
>     A.    That's right.
>
>                  *         *         *
>
>     Q.    And this was more than enough time after Ms. Villa's accident to do a review and see if there was corrective action that should be taken?
>
>     MR. MITCHELL:   Objection; calls for speculation.
>
>     A.    Three months after her accident, correct.

Even through defense counsel's attempts to obstruct, Mr. Morrell admitted that six similar slips and falls on the Bolideck required further investigation that should have been completed and corrective action taken before Mr. McGarry's injury. What would he say to 1000? We can only know when the Court orders the requested discovery.

It only stands to reason that the reasonableness of defendants' response to the notice of the slipping hazard depends on the numerical magnitude of the hazard, which is measured by the number of reported accidents in defendants' records. The Court should order production of these relevant documents as requested by plaintiff.

The ISM Code requires that "accidents . . . [be] reported to the Company, investigated and analyzed with the objective of

Plaintiff's Reply in Support of
Motion to Compel Discovery
(CV03-0269 FDB) - 7



FURY BAILEY

710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288

improving safety. Defendants admit as much: "defendants are required to conduct safety audits under the ISM Code." Although defendants protest that they comply with the ISM Code, plaintiff is entitled to discovery to evaluate whether this protestation is true. If defendants violated the code, it constitutes negligence *per se* under maritime law and is another basis for liability against defendants. Kernan v. American Dredging Co., 355 U.S. 426 (1958). Moreover, the causation requirements are relaxed under the rule of The Pennsylvania, 86 U.S. 148 (1874). The accident reports and documents of defendants' response to them are directly relevant and certainly discoverable in furtherance of plaintiff's claims of liability for violation of the code.

2. <u>Defendants can easily produce information from their computer database.</u> For the first time, defendants disclose some details concerning their computer database of accident information, even though they would not do so in the LR 37 discussions that lead to this motion. Although defendants waste many words arguing how difficult providing the information would be for the period before their computer system was instituted, they ignore plaintiff's agreement to accept the information from the period of time after the database was created:

> "Plaintiff . . . is willing to accept historical records dating back to the institution of defendants' computerized database so as to minimize the effort necessary to provide the information."

Plaintiff's Reply in Support of
Motion to Compel Discovery
(CV03-0269 FDB) - 8

FURY BAILEY

710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600 FAX: (206) 726-0288

1	The information is readily available from the database
2	since 1996.  The Court should order the information requested from
3	that date, as plaintiff has agreed.

4	3.	<u>If it is too hard to provide the information concerning
5	swimming pools, defendants can provide the information concerning
6	the entire Lido deck and plaintiff will sort through it.</u>  Plaintiff restricted
7	his discovery request concerning accident reports to reports of slips
8	and falls near swimming pools believing that this would be easier for
9	defendants.  Now, defendants assert that as so restricted, the request
10	is too burdensome for response because

> Holland America's database is not capable of listing only those
> reported slip and fall accidents near swimming pools . . .

The database apparently can easily search for and produce reports for "all reported slips and falls on the Lido deck." Had defendants but told plaintiff in the LR 37 conference that such a search is easier, plaintiff would have readily agreed, and does so now, to accept amendment of the request to production to the more easily produced documents, i.e., reports of all slips and falls anywhere on the Lido deck. Plaintiff will undertake the burden of sorting through the larger number of documents.  It is unfortunate the defendants refused to engage in reasoned exchange in an LR 37 conference so that this matter could have been addressed at the conference.

4.	<u>Defendants' belated supplemental discovery responses demonstrate the poverty of their objections</u>.  If "It is relatively simple to provide the deck coverings used in the dame

Plaintiff's Reply in Support of
Motion to Compel Discovery
(CV03-0269 FDB) - 9



710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288

location as the ms VEENDAM's Bolidt deck on other Holland America vessels . . . as of February 14, 2003" why did it take bringing this motion to get defendants to disclose the information? It was never provided until the supplement produced in response to the motion. Until the motion was brought, defendants continued to rely on multiple objections including the specious objection that

> VEENDAM is the only Holland America Line vessel owned and chartered by defendants Wind Surf Limited and HAL Cruises Limited. Holland America Line Inc. (formerly Holland America Line Westours, Inc.) acts as agent for a number of vessel owners and charterers, including Wind Surf Limited and HAL Cruises Limited, but owns and/or charters no vessel itself.

The absurdity of this objection is demonstrated by defendants' resounding silence about it in their response to plaintiff's motion. This notwithstanding their refusal to withdraw the objection in the LR 37 conference, requiring plaintiff waste the Court's time by addressing it in his motion.

In fact, it is "relatively simple" to provide information all of the Lido deck coverings. All defendants need to do is provide the date when the original Bolideck 2001 was replaced with Bolideck Select (aka Bolideck 1500 according to Nanna Hogendoorn, defendants Director of Technical Operations) on the vessels where the replacement has occurred.

5.  <u>Defendants are unconcerned with passenger confidentiality and work product does not apply.</u> Except when it benefits them to attempt to hide discoverable information, defendants have no concern for the privacy of their passengers' medical

Plaintiff's Reply in Support of
Motion to Compel Discovery
(CV03-0269 FDB) - 10



710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288

information. According to Thomas Johnson, security officer on the VEENDAM, medical personnel on the vessel "blithely turn around and tell [non-medical vessel personnel that] this passenger came in, got treatment, . . . the nature of the injury, and . . . about the accident . . ." without any permission from the passenger. If they are willing to nilly willy broadcast this information about the vessel to their own non-medical personnel without permission, their expressed concern for the privacy of passenger medical information in opposing discovery sounds a false note.

Plaintiff does not seek medical records. Plaintiff seeks accident reports of the vessel security officer and the passenger that reveal precious little medical information, if any. See the Passenger/Crew Accident Reports <u>Exhibit 7</u>. Neither do the passengers' own reports contain any medical information. See <u>Exhibit 9</u>.

Neither are these accident reports work product. The security officer who prepares them testified:

> Q. What is the purpose of preparing this accident report that you prepare? I'm talking about the one you fill out.
>
> A. The one I prepare? To inform Holland America the activity that has taken place aboard their vessel during that voyage.
>
> Q. For what purpose?
>
> A. That I don't know.
>
> Q. Have you ever been told that the purpose of you filling that out is to prepare for a lawsuit?
>
> A. No.

Plaintiff's Reply in Support of
Motion to Compel Discovery
(CV03-0269 FDB) - 11

FURY BAILEY
710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288

He further testified that the completion of the accident report is for the "passenger's benefit." This is not the indicia of a document subject to the work product protection. In fact, the reports are required by the ISM Code, not in anticipation of litigation.

Even if the protection applied, as plaintiff pointed out in his motion, given the conditional nature of the protection, it does not apply here because plaintiff cannot obtain "the substantial equivalent of the materials by other means." Rule 26(b)(3).

6. <u>Defendants present no case for a protective order.</u> Defendants do not present no facts upon which the Court could order any protective order. They cannot demonstrate that any of the information requested is in fact a trade secret. They submit no evidence of any harm that would be caused by disclosure of the documents, because there is none. They submit no evidence of how the documents sought are in any way a secret, because they are not. It was all disclosed to plaintiff's counsel in another case.

The Safety Management Manual is no secret. Defendants know it, but simply want to obstruct plaintiff's access to relevant evidence. We know that defendants do not want any protective order because they have not sought to have the Court enter one. The relief they request is to deny plaintiff's motion entirely. Defendants only desire is to make discovery as difficult and expensive as possible to deter legitimate claims such as Mr. McGarry's from being brought at all. The Court should not cater to such a desire and should order the discovery requested.

Plaintiff's Reply in Support of
Motion to Compel Discovery
(CV03-0269 FDB) - 12



FURY BAILEY

710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288

## 7. CONCLUSION

Anthony McGarry requests that the Court order the defendants to provide the information concerning swimming pool deck surfaces on its other vessels and its slip and fall accident history on the lido decks and its Safety Management Manual.

DATED this 3rd day of December, 2003.

FURY BAILEY

C. STEVEN FURY
Attorney for Plaintiff

FURY BAILEY
710 Tenth Avenue East
Seattle, WA 98102
(206) 726-6600  FAX: (206) 726-0288

